UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,
Plaintiff,

-v-

ALL USD TETHER HELD IN CRYPTOCURRENCY ADDRESSES, ET AL.,

Defendants.

26-CV-8010 (JPO)

MEMORANDUM AND ORDER

J. PAUL OETKEN, District Judge:

The United States brings this civil forfeiture action alleging that Defendants-*in-rem*, USD currently held in ten cryptocurrency addresses ("Target Addresses") owned by Tether Limited ("Tether"),[1] should be forfeited to the United States under 18 U.S.C. § 981. (*See* ECF No. 1.)

Kristen Breitweiser, individually and as Personal Representative of the Estate of Ronald M. Breitweiser, Caroline Breitweiser (together, "Breitweiser Claimants"); Patricia Ryan, individually and as Personal Representative of the Estate of John J. Ryan, Laura Ryan, Colin Ryan, Kristen Ryan (together, "Ryan Claimants"); and Jacqui Eaton-Garland, individually and as Personal Representative of the Estate of Robert Eaton ("Eaton Claimant") (collectively, "Claimants") filed a claim asserting an interest in Defendants-*in-rem* pursuant to 18 U.S.C. § 981. (ECF No. 3.) Claimants then filed a motion to determine their rights to Defendants-*in-*

[1] The Target Addresses are as follows: TBJT9BP7cM5yYne9kTdf2HNu9mX1WpRQpt; TGuqbYqJ4m1J8dKWB3NVnsuXtgXCQkgdyf; TTc6TVtmRUpYR9fhZeixsNkJuCMRzFqfcb; TVmYFoST9AGCoxryWJCfMSa6wB2fzkqm2d; TSkqigdsdzjzZvAokFNfJBBfHU8HQ7CvAa; TBxCvqQiCQFJqJRc6GWdJhnwCZv4EDdVaV; TXW9gwHiB5fr6gCsQjkRErGxWGa9pyCCrz; TPVZt64P6tkAiVfZBuWdg2ycjPyYkxjxNX; TPDQC3qpjhAykg87exSVy7LxTcXUvndaxW; and TVrxXvMehX5rkFYYZ2gj3E1RLVMNst8TQH. (ECF No. 1 at 2)

*rem* under Section 201(a) of the Terrorism Risk Insurance Act ("TRIA"), 28 U.S.C. § 1610 note. (ECF No. 6.)

Before the Court now are several motions: the Government's motion for a restraining order (ECF No. 13), Claimants' motion to expedite interim relief (ECF No. 10), and the Government's motion to stay responses regarding Claimants' motions to determine their rights under the TRIA and to expedite interim relief (ECF No. 14). For the reasons that follow, the Government's motion for a restraining order and motion to stay are granted, and the Court defers decision on Claimants' motion to expedite interim relief. The parties are instructed to submit a proposed case management plan, including a briefing scheduled for Claimants' motion to expedite interim relief, no later than January 18, 2027.

## I. Background

The Government filed a Verified Complaint commencing this action on September 14, 2026, alleging that Defendants-*in-rem* are the proceeds of black market sales of Iranian crude oil or petroleum products to buyers in China, which were intended to finance Iranian military agencies, including the Islamic Revolutionary Guard Corps ("IRGC"), a designated foreign terrorist organization, and the Armed Forces General Staff ("AFGS"). (ECF No. 1 ("Compl.") ¶¶ 5, 33.) The Government alleges that these are proceeds traceable to violations of the International Emergency Economic Powers Act, 50 U.S.C. § 1705; property involved in money laundering; and/or property involved in the crime of terrorism. (*Id.* ¶¶ 56-69; *see also* ECF No. 14 ("Stay Mot.") at 1.) Specifically, the Government alleges that each of the Target Addresses was used to hold and launder the proceeds of illicit Iranian oil shipments and sales on behalf of or the benefit of or for the benefit of AFGS and the IRGC. (Compl. ¶ 51.) To date, Tether has frozen all of Defendants-*in-rem*, which collectively hold approximately $61,192,367.59. (*Id.*

¶ 54.) The Government seeks forfeiture of Defendants-*in-rem* pursuant to 18 U.S.C. § 981(a)(1)(A), 981(a)(1)(C), and 981(a)(1)(G). (*Id.* ¶ 1.)

The Government began publication on forfeiture.gov on September 26, 2026, in accordance with Rule G of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims. *See Public Notification, in the United States District Court for the Southern District of New York, Court Case Number: 26 Civ. 8010 (JPO); Notice of Forfeiture Action*, Forfeiture.gov (Sep. 26, 2026), [https://perma.cc/M499-A5PR]; Fed. R. Civ. P. Supp. R. G(4)(a)(ii). The publication initiated the 60-day period for potential claimants to assert an interest in Defendants-*in-rem* under Supplemental Rule G(5)(a)(ii), which expires on November 25, 2026.

On September 16, 2026, Claimants filed a notice of their verified claim and statement of interest (ECF No. 3 ("Notice")), and on September 21, 2026, Claimants filed their motion to determine their rights under Section 201(a) of the TRIA (ECF No. 6 ("Claim")). Claimants allege that judgments arising from Iran's material support for the terrorist attacks of September 11, 2001, are relevant to this action because they hold qualifying unsatisfied judgments against Iran, that Iran and/or its agencies and instrumentalities possess the requisite interest in Defendants-*in-rem*, and that Defendants-*in-rem* constitute blocked assets within the meaning of the TRIA. (ECF No. 7 at 6, 12-13.) Specifically, Claimants argue that the court in *In re Terrorist Attacks on Sept. 11, 2001,* No. 3-MDL-1570, 2026 WL 769787 (S.D.N.Y. Mar. 18, 2026), determined that Iran is liable for causing their damages and entered a set of judgments awarding them compensatory, solatium, and punitive damages, as well as pre-judgment interest. (Notice ¶ 2). The Breitweiser Claimants argue they are entitled to $190,556,529.18, the Ryan

Claimants argue they are entitled to $108,450,104, and the Eaton Claimant argues she is entitled to $94,151,729. (*Id.* ¶¶ 4-6.)[2]

Claimants then filed a motion to expedite interim relief on October 2, 2026. (ECF No. 10 ("Exp. Mot.").) In their motion, Claimants report that they conferred with the Government about the Government's preference to allow the notice process to proceed before the Court adjudicates competing claims to Defendants-*in-rem*. (*Id.* at 1.) Nonetheless, Claimants seek an order of attachment pursuant to the TRIA, immediate delivery of that order to the United States Marshals Service, and an effective levy upon Tether if Tether remains in possession of Defendants-*in-rem* or statement of a levy against the United States or Defendants-*in-rem* if the United States has custody of Defendants-*in-rem*. (*Id.* at 1-2.)

It appears that Defendants-*in-rem* have not yet been seized by the Government. On September 14, 2026, the Honorable Ona T. Wang issued a seizure warrant authorizing FBI special agents to seize Defendants-*in-rem* by transferring the assets to an FBI-controlled hardware wallet located in the Southern District of New York. (Compl. ¶ 55; *see also* ECF No. 13 ("RO Mot.") at 2-3.) Defendants-*in-rem* are currently blocked by Tether, meaning that the Target Addresses can no longer send money. (RO Mot. at 3.) To effectuate the seizure, Tether will have to "burn" the cryptocurrency tokens currently held in the Target Addresses and issue replacement tokens of the same value to be transferred into the Government's custody. (*Id.*)

[2] Two other sets of claimants have since also filed claim and statements of interest in Defendants-*in-rem*, also based on judgments against Iran based on Iran's involvement in the terrorist attacks of 9/11. On October 7, 2026, a second group of claimants filed a claim alleging that they are entitled to $279,877.952.78. (*See* ECF No. 16 at 3.) On October 10, 2026, a third group of claimants filed a claim alleging they are collectively entitled to $5,903,537,458.11, plus pre- and post-judgment interest. (*See* ECF No. 19 at 7.)

Accordingly, on October 5, 2026, the Government filed a motion seeking a restraining order to ensure that Defendants-*in-rem* remain available for forfeiture until Tether effectuates the seizure and Defendants-*in-rem* proceed to the custody of the Government. (*See generally id.*) Specifically, the Government requests a restraining order that permits Tether to effectuate the seizure warrant while preventing Defendants-*in-rem* from being dissipated, encumbered, or transferred in a way that renders them unavailable.[3] (*Id.* at 4-5; *see also* ECF No. 13-2.) That same day, the Government also filed a motion to stay proceedings—specifically, responses to Claimant's motion to determine their rights under the TRIA (Claim) and expedite interim relief (Exp. Mot.)—until at least a month after the close of the publication period on November 25, 2026 (*See* Stay Mot.). Claimants filed an opposition to the Government's motion to stay on October 7, 2026, reiterating their request for expedited attachment. (ECF No. 17 ("Stay Opp.").)

## II. Discussion

Pursuant to the Civil Asset Forfeiture Reform Act ("CAFRA"), courts have broad *in rem* jurisdiction and may issue "restraining order[s] or injunction[s] . . . to seize, secure, maintain, or preserve the availability of property subject to civil forfeiture" after a complaint for civil forfeiture is filed. 18 U.S.C. § 983(j)(1)(A); *see also* Fed. R. Civ. P. Supp. R. G(7)(a) ("When the government does not have actual possession of the defendant property the court . . . may enter any order necessary to preserve the property, to prevent its removal or encumbrance, or to

[3] In relevant part, the Government's proposed restraining order provides that "[a]ll persons or entities having actual knowledge of this Order shall not, directly or indirectly, transfer, sell, assign, pledge, hypothecate, encumber, or dispose of in any manner; cause to be transferred, sold, assigned, pledged, hypothecated, encumbered, disposed of in any manner; or take, or cause to be taken, any action that would have the effect of depreciating, damaging, or in any way diminishing the value of the all USDT currently held in the [Target Addresses], except to allow Tether to effectuate the Government's seizure of the Defendants-*in-rem* pursuant to the seizure warrant described in the Complaint." (ECF No. 13-2 at 2-3.)

prevent its use in a criminal offense."). Given that Defendants-*in-rem* are assets subject to civil forfeiture not yet in the Government's custody, a restraining order is necessary to preserve the Government's ability to seize these assets pursuant to its seizure warrant. Since Claimants "do not oppose preservation of the Defendant Property," their interests ostensibly align with the imposition of this restraining order. (Stay Opp. at 1.)

The restraining order also prevents other potential claimants and creditors from encumbering, disposing, or diminishing the value of Defendants-*in-rem*, thereby addressing Claimants' concern that "another Iran judgment creditor could potentially take a priority-producing enforcement step" against Defendants-*in-rem* while this action is pending. (Exp. Mot. at 2; *see also* RO Mot. at 4-5.) Indeed, Claimants note they are "amenable to the Government's requested extension and to orderly completion of the forfeiture notice process, provided that the delay itself does not prejudice whatever enforcement position they are presently entitled to establish." (Exp. Mot. at 6; *see also* Stay Opp. at 1 ("Claimants do not oppose . . . orderly completion of the Rule G notice process.").) The restraining order preserves their present enforcement position by ensuring that Defendants-*in-rem* will not be made otherwise unavailable, including through other creditors seeking to establish priority.

For similar reasons, the Court agrees with the Government that it is prudent to stay proceedings regarding Claimants' TRIA claims and associated request for a writ of attachment until after the close of the notice period. (*See generally* Stay Mot.) The relief requested by Claimants would be premature. To issue an order of attachment for Claimants would bypass threshold questions of whether they can establish standing and whether TRIA claims can be raised in forfeiture actions, both of which have yet to be fully briefed (despite the parties' attempts in the letter motions at hand). (*See id.* at 2-4; Stay Opp. at 2-5). It would be similarly

premature to adjudicate which creditors should receive priority, since the Court has yet to determine who has any interest in Defendants-*in-rem*—let alone superior ones. Moreover, as the notice period has yet to expire, other considerations relevant to priority may still arise.

Claimants argue that the attachment they seek is time-sensitive because federal sovereign immunity may bar their chance to recover after Defendants-*in-rem* enter the custody of the federal government. (Stay Opp. at 2 ("Once the Defendant Property is transferred into the Government's custody, federal sovereign immunity may materially impair the Moving Claimants' ability to obtain the attachment they presently seek.").) But the Government's actual custody of Defendants-*in-rem* has no bearing on the application of foreign sovereign immunity here. "All right, title, and interest" in forfeited property "shall vest in the United States upon commission of the act giving rise to forfeiture." 18 U.S.C. § 981(f). In other words, the act giving rise to forfeiture is the underlying criminal conduct at issue—not the actual entry of the defendant property into the government's custody. *See United States v. Chowaiki*, 369 F. Supp. 3d 565, 571-72 (S.D.N.Y. 2019) ("[T]he government's interest in the proceeds of a[n offense] vests [under Section 981(f)] as soon as those proceeds come into existence." (quoting *United States v. Daugerdas*, 892 F.3d 545, 548 (2d Cir. 2018))); *see also United States v. All Assets Held at Bank Julius Baer & Co.*, 772 F. Supp. 2d 191, 201 (D.D.C. 2011) (Section 981(f) "reaches back in time to forfeit property to the government"—"back to the time of the criminal acts to forfeit the property to the United States" (quoting *United States v. BCCI Holdings (Luxembourg), S.A.*, 46 F.3d 1185, 1191 (D.C. Cir. 1995))).

Here, the "act giving rise to forfeiture" has already long since occurred, as the underlying criminal conduct for which the Government alleges Defendants-*in-rem* stretches back years. *See generally* Compl. Whether Claimants' interest in that property vested prior to and is thus

superior to the Government's is a separate question again to be evaluated after the close of the notice period, if at all. *See All Assets*, 772 F. Supp. 2d at 201 ("[C]laimed third-party interests are measured as of the time at which the criminal acts in question occurred."). But whether or not Defendants-*in-rem* are technically in the Government's custody is immaterial to this question. Claimants are not entitled to a premature adjudication of their purported rights to Defendants-*in-rem* based on this misguided theory of federal sovereign immunity.

## III. Conclusion

For the foregoing reasons, the Government's motion for a restraining order is GRANTED. The Court will enter the restraining order as a separate order.

The Government's motion to stay proceedings regarding ECF Nos. 6 and 10 is GRANTED. The initial pretrial conference is set for January 25, 2027, at 3:00 p.m. Counsel should call 855-244-8681 at the scheduled time. The access code is 2312 828 7066 ##. **Counsel for all parties**—including the Government, Claimants, and any additional parties who have filed or will have filed a statement of interest regarding Defendants-*in-rem* before the close of the notice period on November 25, 2026—**shall file a case management plan for litigating and resolving all pending claims, including a proposed briefing schedule for the Government and Claimants regarding ECF Nos. 6 and 10, no later than January 18, 2026.** If the parties agree on all deadlines and have no issues to address at the initial conference, the Court may adjourn the conference. The Government is directed to promptly notify the Court when Tether has effectuated seizure and Defendants-*in-rem* have entered the Government's custody.

The Clerk of Court is directed to close the motions at Docket Numbers 13 and 14.

SO ORDERED.

Dated: October 21, 2026
New York, New York

J. PAUL OETKEN
United States District Judge